UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NELSON HERNANDEZ, | : | |
| Plaintiff, | : | |
| | : | CASE NO. 3:04-cv-1283(WWE) |
| | : | |
| vs. | : | |
| | : | |
| TOWN OF MILFORD; | : | |
| OFFICER K. RAHN, INDIVIDUALLY | : | |
| AND IN HIS OFFICIAL CAPACITY; | : | |
| OFFICER W. CABLE, INDIVIDUALLY | : | |
| AND IN HIS OFFICIAL CAPACITY; | : | |
| OFFICER T. DANCY, INDIVIDUALLY | : | |
| AND IN HIS OFFICIAL CAPACITY; | : | |
| OFFICER J. PIETRAFESA, INDIVIDUALLY | : | |
| AND IN HIS OFFICIAL CAPACITY; | : | |
| OFFICER C. KAKALOW, INDIVIDUALLY | : | |
| AND IN HIS OFFICIAL CAPACITY; | : | |
| SERGEANT WALSH, INDIVIDUALLY | : | |
| AND IN HIS OFFICIAL CAPACITY; | : | |
| INSPECTOR W. SCHULTZ, INTERIM | : | |
| CHIEF OF POLICE, INDIVIDUALLY | : | |
| AND IN HIS OFFICIAL CAPACITY, | : | |
| Defendants. | : | SEPTEMBER 9, 2005 |

## RULING ON DEFENDANTS' MOTION TO DISMISS

This action concerns plaintiff Nelson Hernandez's allegations of the deprivation of both

federal and state constitutional rights pursuant to 42 U.S.C. sections 1983 and 1988 and the

Fourth, Fifth, Sixth, Eighth, Tenth and Fourteenth Amendments of the United States

Constitution.  He asserts violations of his rights under Article One, sections 7, 8 and 9 of the

Connecticut Constitution, recklessness and gross negligence, negligence, intentional infliction of

emotional distress, malicious prosecution, and Connecticut General Statutes sections 52-557n.

He seeks to hold the Town legally liability pursuant to Connecticut General Statutes section 7-

1

465.  The defendants, the Town of Milford, Officer K. Rahn, Officer T. Dancy, Officer J.

Pietrafesa, Officer C. Kakalow, Sergeant Walsh and Inspector W. Schultz, have moved for the

dismissal of all counts.  The Court will grant the defendants' motion to dismiss as to all counts

against Officers Dancy, Pietrafesa and Kakalow (i.e., Counts One, Two, Three, Four, Six and

Seven).  The Court will, *sua sponte*, also dismiss all claims against Sergeant Walsh.  Although

named as defendants, the plaintiff does not attribute any actions to these individuals, save for the

allegation that Officer Dancy transported the plaintiff to the Milford police station.  The Court

finds no liability on the part of Officer Dancy by virtue of this one alleged act.  Therefore, these

defendants will not be addressed further in this ruling.  The Court will deny the motion to dismiss

as to Counts One, Three, Four, Six, Eight, Nine, Ten, Eleven, Twelve, Fourteen, Fifteen, Sixteen

and Seventeen of the complaint and will also deny the motion to dismiss as to Count Two, except

for the portion of Count Two that alleges a claim for malicious prosecution.  The Court will grant

the motion to dismiss as to Counts Seven and Thirteen.

## I.  BACKGROUND

On or about September 13, 2003, the plaintiff was registered as a guest at the Turnpike

Motel in Milford, Connecticut.  At approximately 9:30 p.m., defendant Rahn, of the Milford

Police Department, was patrolling the parking lots of hotels in that area.  Specifically, he

researched information concerning vehicles in the parking lots of these establishments, checking

their license plates with the Connecticut Department of Motor Vehicles data base and the

National Crime Information Center.  In the course of such review, defendant Rahn investigated

the status of a 2001 Dodge Intrepid registered to the plaintiff, Nelson Hernandez, date of birth

May 10, 1963.  Pursuant to his investigation of the plaintiff's vehicle, defendant Rahn learned

that there was an outstanding warrant for aggravated assault originating in Rockville, Maryland for a Nelson Portillo Hernandez, date of birth May 10, 1953.[1]  Prior to receiving confirmation or further information regarding the warrant from the Rockville, Maryland police, defendant Rahn, joined by defendant Cable, decided to stop and detain the plaintiff based on the information they had at that time.

At approximately 10:10 p.m., the defendants stopped the plaintiff.  They ordered him out of his vehicle and searched and advised him of the outstanding warrant.  In his attempt to convince the defendants that he was not the subject of the warrant, Mr. Hernandez provided the defendants with his social security number[2] and his date of birth.  The defendants were also able to observe Mr. Hernandez's physical appearance and compare it to the physical description of Nelson Portillo Hernandez contained in the warrant.[3]  Despite the fact that there were no records of Nelson Portillo Hernandez's fingerprints, defendant Rahn arranged for a field fingerprinting of the plaintiff and compared them to a record of fingerprints of Nelson Hernandez taken in Port Chester, New York, on October 8, 1994.  These fingerprints had been taken in conjunction with the plaintiff's arrest for driving under the influence, for which he had never been convicted.  This arrest had no relationship to Maryland's outstanding warrant for assault.

The plaintiff was then placed under arrest and transported in handcuffs to the Milford

---

[1]The plaintiff refers to the subject of the warrant as both "Nelson Portillo Hernandez" and "Nelson Pedillo Hernandez."  We shall adopt the former moniker.

[2]It is undisputed that the warrant did not include Nelson Portillo Hernandez's social security number.

[3]According to the warrant, Nelson Portillo Hernandez has brown eyes, brown hair and weighs one hundred and ninety pounds.  The Plaintiff's hair was black and gray.

police station by defendant Dancy.  The plaintiff repeatedly told the defendants that he was not

the individual referred to in the warrant, had never been to Maryland, and urged them to compare

his social security number and physical description with that of Nelson Portillo Hernandez.

The plaintiff was placed in a holding cell and was subsequently arraigned on September

15, 2003.  The State did not offer any additional information regarding the identity of the subject

of the warrant and the plaintiff was ordered held in jail.  The State set a $500,000 bond.

While in custody, on September 16, 2003, the <u>Connecticut Post</u>, the Bridgeport

newspaper, printed an article about the plaintiff, quoting a Milford Police spokesperson that

"new information" had traced the plaintiff to the Turnpike Motel.  The spokesperson identified

the plaintiff as the subject of the warrant, gave his home address, described the alleged crime

behind the issuance of the arrest warrant, and claimed that the plaintiff had been hiding in

Bridgeport for three years.

On September 20, 2003, the plaintiff appeared in Superior Court.  The State still did not

have any additional information regarding Nelson Portillo Hernandez and the plaintiff remained

in custody.

On September 23, 2003, the plaintiff's counsel requested that a photograph of the

plaintiff be taken and sent to Rockville in order to conduct a comparison between the plaintiff

and Nelson Portillo Hernandez.  Upon review of this photograph, the victims of the alleged

assault asserted that the plaintiff was not the subject of the warrant.  Shortly thereafter, the

plaintiff was released from custody.

## II. DISCUSSION

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The function of a motion to dismiss "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). In considering a motion to dismiss, a court must presume all factual allegations of the complaint to be true and must draw any reasonable inferences in favor of the non-moving party. Cruz v. Beto, 405 U.S. 319, 322 (1972). "This standard is applied with particular strictness when the plaintiff complains of a civil rights violation." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).

In Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S.Ct. 992 (2002), the Supreme Court held that a complaint must be read pursuant to a notice pleading standard . The Court determined that the pleading requirement is not a standard or inflexible one. "To measure a plaintiff's complaint against a particular formulation of the prima facie case at the pleading stage is inappropriate." The Court noted that "before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case." This simplified notice pleading standard is  provided by Federal Rule of Civil Procedure 8(a)(2) and "relies on liberal discovery rules and summary judgement motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz v. Sorema N.A., 534 U.S. at 512. "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal

5

practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court."   <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. at 512-513 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure, section 1202, p. 76 (2d ed. 1990)).

The plaintiff claims that he was arrested without probable cause and detained for a period of eleven days, in violation of both his federal and state constitutional rights (Counts One, Two, Eight, Nine, Fourteen and Fifteen).  He also argues that the defendants Officers Rahn and Cable acted with recklessness and gross negligence (Count Three), negligence (Count Four), intentional infliction of emotional distress (Count Six)[4] and malicious prosecution (Count Seven). Furthermore, he claims that defendant Inspector Schultz acted with recklessness and gross negligence (Count Ten), negligence (Count Eleven), intentional infliction of emotional distress (Count Twelve) and malicious prosecution (Count Thirteen).  Against the Town of Milford, the plaintiff asserts the violations of his rights pursuant to the Connecticut Constitution (Count Fourteen) and to U.S.C. sections 1983 and 1988 (Count Fifteen), the violations of Connecticut General Statutes section 52-557n (Count Sixteen) and the Town's legal liability to the plaintiff pursuant to Connecticut General Statutes section 7-465 (Count Seventeen).  The Court shall consider the plaintiff's federal claims first.

A.  Federal Claims

In Counts Two, Nine and Fifteen (against defendants Rahn, Cable, Schultz and the Town, respectively), the plaintiff asserts claims that the defendants are liable to the plaintiff pursuant to U.S.C. sections 1983 and 1988 based on their violations of his rights afforded by the Fourth,

---

[4]There is no Count Five included in the Complaint.

Fifth, Sixth, Eighth, Tenth and Fourteenth Amendments of the United States Constitution.[5]

These arise, the plaintiff claims, as a result of the false arrest and improper, eleven-day

imprisonment.

    1.  Section 1983 Claims

    The Court shall first consider the plaintiff's federal claims of violations of his

constitutional rights pursuant to U.S.C. section 1983.  "To state a claim for relief in an action

brought under Section 1983, plaintiffs must establish that they were deprived of a right secured

---

[5]The Fourth Amendment of the United States Constitution provides that it shall be "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

The Fifth Amendment provides that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

The Eighth Amendment provides that "excessive bail shall not be required, nor excessive fines imposed, not cruel and unusual punishments inflicted."

The Tenth Amendment provides that "the powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."

Section 1 of the Fourteenth Amendment provides that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.  Courts have consistently treated the 'under the color of state law' element of section 1983 as the same thing as the 'state action' required under the Fourteenth Amendment."  Szekeres v. Schaeffer, 304 F.Supp.2d 296, 304 (D.Conn. 2004).

     a.  Count Two

In Count Two, the plaintiff specifically levies his complaints against Officers Rahn and Cable.  He argues that they failed to exercise due care regarding his arrest on September 13, 2003, when they falsely arrested him pursuant to a warrant executed for the purpose of arresting one Nelson Portillo Hernandez, an individual of no relation to the plaintiff, wanted for aggravated assault originating in Rockville, Maryland.  The plaintiff alleges that the warrant included a physical description of the subject as well as his birth date.  The warrant described a man with brown eyes, brown hair, weighing 190 pounds, having a birth date of May 10, 1953. At the time of the arrest, the plaintiff had black graying hair. His birth date is May 10, 1963.  The plaintiff cooperated with the officers, providing them his social security number and his birth date.  The warrant allegedly did not include Nelson Portillo Hernandez's social security number. The plaintiff repeatedly asserted that he was not the individual described in the warrant.  The officers, however, placed him under arrest and transported him to the Milford police station.

The defendants argue that the officers are not liable because they arrested the plaintiff pursuant to a valid warrant and that there was probable cause to arrest him.  In the alternative, they argue that they are not liable because they are protected by qualified immunity and that there can be no action for malicious prosecution against a police officer.

8

i.  Probable Cause

Taking all facts alleged in the complaint as true, the warrant issued by the Maryland judiciary did not justify the defendants' arrest of the plaintiff and, as such, violated his rights guaranteed by the Constitution.  The law regarding arrest warrants is well settled.  In order for a warrant for arrest to be valid, it must  "contain the defendant's name or, if it is unknown, a name or description by which the defendant can be identified with reasonable certainty."  Fed. R. Civ. P 4(b).  "By the common law, a warrant for the arrest of a person charged with a crime must truly name him, or describe him sufficiently to identify him."  Powe v. City of Chicago, 664 F.2d 639, 645 (7th Cir. 1981).

 "Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause."  Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).   However, it is necessary that the arresting officers have "probable cause" or a "reasonable belief" that the individual named and described within the warrant is indeed the individual they are placing under arrest.  "What the Fourth Amendment does guarantee is that no person shall be arrested unless there is good reason to believe that *he* or *she* has committed a particular crime."  Powe v. City of Chicago, 664 F.2d at 647 (1981) (emphasis added).  "The inclusion of names that might be incorrect, combined with the omission of a specific description of the person sought, creates a substantial risk, not simply that an innocent person will be arrested, but that a person to whom not the least suspicion has attached will be arrested.  This risk cannot be tolerated under the Fourth Amendment."  Powe v. City of Chicago, 664 F.2d at 648.

"Probable cause is the single requirement for a lawful arrest under the Fourth

9

Amendment." Romagnano v. Town of Colchester, 354 F.Supp.2d 129, 135 (D.Conn. 2004).

"Probable cause is a compilation of facts and circumstances within the officer's knowledge that

are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the

circumstances shown, that the suspect has committed, is committing, or is about to commit an

offense." Michigan v. DeFillipo, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). "The

burden of establishing probable cause rests with the police, who must establish that there was a

quantum of evidence which amounted to more than a rumor or suspicion, or even a strong reason

to suspect." Travis v. Village of Dobbs Ferry, 355 F.Supp.2d 740, 748 (S.D.N.Y. 2005).

Taking all of the facts alleged as true, as the Court must do on a motion to dismiss, it

appears that the plaintiff was arrested without such necessary probable cause. While the warrant

in question included the necessary information as to the person to be arrested (Nelson Portillo

Hernandez), it was not valid as to the plaintiff in that it did not include a description of the

plaintiff.   Mr. Hernandez's arrest was occasioned by his mere presence at the Turnpike Motel in

Milford, Connecticut and the similarity between his name and part of the name of Nelson Portillo

Hernandez.  Officer Rahn's research regarding the plaintiff's 2001 Dodge Intrepid revealed only

that the vehicle was registered under the name of a man whose name was similar - although not

identical – to the man named in the outstanding warrant originating in Rockville, Maryland.

Neither the date of birth nor the physical description of the men matched.  Although the

defendant officers conducted a field fingerprinting of the plaintiff and discovered a match on

record in Port Chester, New York, dating from an arrest of the plaintiff for driving under the

influence on October 8, 1994, this test was completely superfluous since all it confirmed was that

Nelson Hernandez's fingerprints taken on September 13, 2003 matched his fingerprints taken on

October 8, 1994.[6]   There was no evidence of Nelson Portillo Hernandez's fingerprints included in the warrant.  Furthermore, there was no indication that the plaintiff was engaged in any questionable activity at the time of his arrest – he was a registered guest staying at a motel and had left his room at the time Officer Rahn was conducting his research. Accordingly, the Court will deny the motion to dismiss on this basis.

   ii.  Qualified Immunity

   The defendants also argue that Count Two should be dismissed because the officers are entitled to qualified immunity.  Again, taking all the facts as true, the Court will deny the motion to dismiss on these grounds.

   "The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. section 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known."  Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).  "The qualified immunity defense is intended to strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority."  Lee v. Sandberg, 136 F.3d 94, 100 (2d Cir. 1997).  When a plaintiff alleges an arrest without probable cause, qualified immunity may stand as a defense "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  Golino v.

_____

[6]The plaintiff told the defendant officers that he had been arrested for but never charged with driving under the influence in Port Chester, New York.

City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).

      The test for the applicability of qualified immunity is three-pronged.  First, the court must determine whether the defendant's actions, taken in the light most favorable to the plaintiff, set forth conduct that violated a constitutional right.  If a violation is established, the next question is whether the right was clearly established.  The third question is whether it could be clear to a reasonable officer that his or her conduct was unlawful in the situation confronted.  Saucier v. Katz, 533 U.S. 194, 201-202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

      Here, the plaintiff satisfies each prong of the test.  The facts the plaintiff has alleged present a violation of the plaintiff's Fourth Amendment right to be free from unlawful seizure.  The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon *probable cause*, supported by oath or affirmation, and *particularly describing the place to be searched and the persons or things to be seized*." (Emphasis added.)

      Considering the second question, an individual's rights under the Fourth Amendment are well established.  As discussed above, it is axiomatic that probable cause is required before an arrest can be made.  Here, as alleged, no probable cause existed and the defendants should have been aware that the right to the existence of probable cause is a vital part of our constitutional rights.

      The third question, whether a reasonable police officer would know that the conduct complained of was unlawful, has presented much confusion among the courts.  The Second Circuit has pointed out that the first and third prongs of the test are "circular."

At first blush, the two rulings appear to involve the same question – whether the officers' conduct was objectively reasonable.  Indeed, there is a seeming circularity to inquiring first whether the circumstances as perceived by a reasonably prudent officer would justify that the person arrested had committed a crime, and, after finding that the circumstances would not justify such a belief, proceeding to inquire whether a police officer could reasonably believe that the officer's conduct was lawful.  It is not readily apparent how a police officer could have an objectively reasonable belief that conduct was lawful when the unlawfulness of that conduct rests on a determination that an objectively reasonable police officer would not have acted.. . .   Nevertheless, we have been authoritatively instructed that the objective reasonableness of the inquiry as to lawfulness is not the same as the objective reasonableness component of the inquiry as to qualified immunity. . . . The result of the distinction between reasonableness as a component of a Fourth Amendment violation and reasonableness as a component of an immunity defense is that an officer is protected in some circumstances even when he mistakenly concluded that probable cause is present, i.e., when he reasonably believed that a reasonably prudent police officer would have acted even though a reasonably prudent police officer would not have acted.

Oliveira v. Mayer, 23 F.3d 642, 648, 649 (2d Cir. 1994) (citing Anderson v. Crieghton, 483

U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  Thus, as here, the police officer's own belief

may differ from the reasonableness standard attributable to the "reasonably prudent police

officer."   In other words, even if Officers Rahn and Cable reasonably believed they had probable

cause to arrest the plaintiff, a reasonably prudent police officer would not have so believed and

would not have acted similarly.

Furthermore, even if the defendants' conduct does not obviously deny them qualified

immunity, the decision is not viable at the dismissal stage.  "A defense of qualified immunity

cannot ordinarily support dismissal under Rule 12(b)(6)."  Liffiton v. Keuker, 850 F.2d 73, 76

(2d Cir. 1988).  The defendants argue that the question of qualified immunity should be

determined as soon as possible, in the nascent stages of the litigation.  They point out that the

United States Supreme Court has "repeatedly stressed the importance of resolving immunity

questions at the earliest possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224, 227, 112

13

S.Ct. 534, 116 L.Ed.2d 589 (1985).  The question of qualified immunity, however, "depends on the circumstances and motivations of [the police officer's] actions, as established by the evidence."  Green v. Maraio, 772 F.2d 1013, 1018 (2d Cir. 1983) (citing Imbler v. Pachtman, 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)).   The facts in the record before the Court today do not support a dismissal of Count Two based upon the theory of qualified immunity.

iii.  Malicious Prosecution

The defendants also argue that Count Two should be dismissed because the facts as alleged do not support a claim for malicious prosecution pursuant to Section 1983. "Under Connecticut law, in addition to malice, an action for malicious prosecution requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; and (3) the defendant acted without probable cause."  Chance v. Cundy, 2004 WL 1497547, *8.   "In order to succeed on a section 1983 claim for malicious prosecution, plaintiff must show conduct that was tortious under state law and that injury was caused by the deprivation of liberty guaranteed by the Fourth Amendment."  Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997).

The Court concludes that the complaint does not allege a prima facie case of malicious prosecution pursuant to Connecticut law.  Specifically, the Court finds that the plaintiff fulfills the first and third prongs of the test for malicious prosecution – i.e., the defendants did procure the institution of criminal proceedings against the plaintiff and the defendants acted without probable cause – but we do not find that the proceedings terminated in the plaintiff's favor, thus precluding a finding of malicious prosecution.  "Certain types of dispositions that do not result

14

from adjudication of the merits have generally been held not sufficiently favorable to the accused to be indicative of innocence.  The principal rationale is that [dismissals without adjudication on the merits] may not end the state's pursuit of the accused on the same charges, for a renewed prosecution may be commenced in a proper court on a facially sufficient pleading." Murphy v. Lynn, 118 F.3d at 948-49.

Here, the plaintiff was released from jail without any adjudication of the merits of the case.  It was found merely that the state was not able to keep him incarcerated based on the perimeters of the arrest.  The plaintiff's release from jail does not constitute a termination of the proceedings as he, conceivably, could be arrested subsequently under a proper warrant that did provide the arresting officers with the necessary probable cause.  Accordingly, we will grant the defendants' motion to dismiss Count Two only inasmuch as it alleges a claim for malicious prosecution.  This conclusion leads us to grant the defendants' motion to dismiss Counts Seven and Thirteen as well.

b.  Count Nine

The defendants argue that Count Nine of the plaintiff's complaint should be dismissed because Inspector Schultz is entitled to qualified immunity.  In order for Inspector Schultz to be entitled to qualified immunity, the plaintiff must allege that Inspector Schultz was personally involved in the underlying constitutional violation.  "It is well settled in the Second Circuit that claims against supervisors for the constitutional torts of their supervisees may attach only if: (1) the supervisory official, after learning of the violation, failed to remedy the wrong; (2) the supervisory official created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (3) the supervisory official was grossly

15

negligent in managing subordinates who caused the unlawful condition or event."  Birdsall v. City of Hartford, 249 F.Supp.2d 163, 172 (D.Conn. 2003).

Bearing in mind the liberal pleading standard governing a motion to dismiss, we examine all facts regarding Inspector Schultz's qualified immunity alleged in the complaint as true.  See Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 254 (2d Cir. 2001) (affirming district court's denial of motion to dismiss defendants' claim of supervisor's qualified immunity when "the factual allegations and all reasonable inferences therefrom" demonstrate the sufficiency of the complaint).  Here, the plaintiff claims that Inspector Schultz is not entitled to qualified immunity because, *inter alia*,  he failed to train the officers under his command in the use of national criminal databases and failed to have sufficient policies, practices, procedures and guidelines in effect pertaining to the use of these databases.  He has alleged that the officers' faulty utilization of the National Crime Information Center, specifically their misuse of the available fingerprint comparisons, led to his false arrest and wrongful imprisonment.  He asserts that this improper use was a result of the failure of Inspector Schultz to train them adequately. He also claims that Inspector Schultz failed to supervise or to have in place sufficient policies, practices, procedures and guidelines regarding the officers' general conduct as police officers. Therefore, the facts alleged; i.e., that the fingerprint analysis was useless, that the plaintiff was erroneously incarcerated for eleven days and that the police department spokesperson informed the Connecticut Post facts about the plaintiff and his alleged involvement in the assault in question, lead us to the conclusion that the plaintiff's complaint is sufficient to withstand a motion to dismiss.  Accordingly, we deny the defendants' motion to dismiss Count Nine.

c. Count Fifteen

The defendants argue that Count Fifteen of the complaint should be dismissed because the Town of Milford is entitled to governmental immunity.  In order to prevail on a claim against a municipality pursuant to section 1983, the "plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993).  He must plead that there exists  "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).  "We have previously ruled that a municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995).  The plaintiff need not show "that the policy was engraved in an explicitly adopted rule or regulation." Pangburn v. Culbertson, 200 F.3d 65, 71 (2d Cir. 1999).  Indeed, the court may draw an inference of unconstitutional policy from evidence that a municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction. City of Canton v. Harris, 489 U.S. 378, 388-92, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Here, the plaintiff alleges, *inter alia*, that the Town failed to train its police officers adequately and failed to promulgate and enforce appropriate policies, guidelines and procedures regarding the national criminal databanks, probable cause and effectuation of arrest.  He claims that, in addition to being unconstitutionally incarcerated for eleven days, he was the subject of an article published in the Connecticut Post on September 16, 2003, in which a "Milford police spokesperson" was quoted as saying the department was in receipt of "new information" about the plaintiff, describing the incident that had led to the plaintiff's arrest and provided the

17

plaintiff's home address.  Furthermore, the plaintiff was not released from jail until September 23, 2003.

It is reasonable to infer that the Town of Milford was aware of these alleged facts and, by failing to address the police officers in question, to remedy the situation speedily, or to supervise the actions of a representative of the Town (the Police Department spokesperson), demonstrates a deliberate indifference towards those under its jurisdiction and suggests the existence of a policy or custom implicating as much.  "The inference that such a policy existed may arise from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Dwares v. City of New York, 985 F.2d at 100. The plaintiff must be permitted to collect discovery and present evidence regarding this claim.  Accordingly, the defendants' motion to dismiss Count Fifteen is denied.

B.  State Claims

Regarding the plaintiff's state law claims as set forth in Counts One, Three, Four, Six, Seven, Eight, Ten, Eleven, Twelve, Fourteen, Sixteen and Seventeen, the Court shall retain supplemental jurisdiction and will deny the defendants' motion to dismiss said claims.

However, inasmuch as the Court will grant the defendants' motion to dismiss the malicious prosecution prong of Count Two, it will also dismiss Counts Seven and Thirteen for the same reasons.

18

### III.  CONCLUSION

For the foregoing reasons, the court denies the defendants' motions to dismiss [Doc. # 11] Counts One, Three, Four, Six, Eight, Nine, Ten, Eleven, Twelve, Fourteen, Fifteen, Sixteen and Seventeen.  The Court will also deny the defendants' motion to dismiss Count Two, except for the extent to which Count Two alleges an action for malicious prosecution against Officers Rahn and Cable.  The Court will grant the defendants' motion to dismiss Counts Seven and Thirteen. The Court will dismiss all claims against Officers Dancy, Pietrafesa and Kakalow (i.e., Counts One, Two, Three, Four, Six and Seven). The Court will also, *sua sponte*, dismiss all claims against Sergeant Walsh.  The plaintiff is hereby instructed to amend his complaint by September 30, 2005 to reflect the remaining Counts as articulated in this ruling.

SO ORDERED this 12th day of September, 2005.


_____/s/_____
Warren W. Eginton
Senior United States District Judge